UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| TRACY GREGORY, | ) |
| Plaintiff, | ) Case No. CV08-07439 AJW |
| v. | ) MEMORANDUM OF DECISION |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The parties are familiar with the procedural facts, which are summarized in the Joint Stipulation. [See JS 2]. Plaintiff alleges that she became disabled on March 23, 2004 due to asthma and breathing problems, depression, and anxiety. [JS 3; Administrative Record ("AR") 46-47]. In a written hearing decision that constitutes the Commissioner's final decision in this case, an Administrative Law Judge ("ALJ") concluded that plaintiff was not disabled because she retained the residual functional capacity ("RFC") to perform her skilled, light past relevant work as a medical assistant. [JS 2; AR 32-35]. In the

alternative, based on the testimony of a vocational expert and Rules 202.21 and 201.28 of the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids"), the ALJ found that plaintiff's RFC did not preclude her from performing unskilled sedentary or light jobs that exist in significant numbers in the national economy. [AR 35].

## Standard of Review

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

## Discussion

**Medical opinion evidence**

Plaintiff contends that the ALJ erred in finding that plaintiff had no more than mild mental functional limitations that did not constitute a severe mental impairment. Specifically, plaintiff argues that the ALJ improperly rejected the opinions of a workers' compensation treating psychiatrist, Dr. Friedman, and two examining physicians, Dr. Brawer and Dr. Zodkevitch, in favor of the conflicting opinion of another examining psychiatrist, Dr. Greils. [See JS 8-31].

In her statements to doctors and testimony, plaintiff alleged that she stopped working as a medical assistant in a Kaiser Permanente sigmoidoscopy clinic due to respiratory problems, and that she was diagnosed with "asthma, probably exacerbated by exposure to Cidex" (glutaraldehyde), a chemical solvent used in a machine for sterilizing medical equipment that plaintiff routinely used and maintained as part of her job duties. She alleged that she developed anxiety and depression due to her concerns about her past

exposure to Cidex and phobias about possible present or future exposure to other chemical irritants. [See AR 18-22, 46-47, 370, 405-408, 462-464, 501, 564-565].

At step two of the sequential evaluation procedure, the ALJ found that plaintiff had no severe mental impairment. [AR 14]. Although a finding of no severe mental impairment ordinarily disposes of the issue of any mental functional limitations, the ALJ returned to the question of the existence and severity of a mental impairment when she assessed plaintiff's RFC at step four. The ALJ analyzed the evidence of record in detail and ultimately found that plaintiff had only mild mental functional limitations that no more than minimally affected her ability to perform basic work activities. [AR 22-30]. Accordingly, any error in the ALJ's severity finding at step two was harmless. See Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007)(holding that where the ALJ failed to consider the claimant's bursitis at step two, any error was harmless because he extensively considered that impairment at step four)(citing Stout, 454 F.3d at 1054)(recognizing that harmless error applies in the social security context)).

**Dr. Friedman**

David L. Friedman, M.D., evaluated plaintiff in connection with her workers' compensation examination case in June 2004 and July 2005. Plaintiff was seen by other providers in his office for medication management and group therapy from July 2005 through November 2005. [AR 249-268, 271-274, 276-292]. During his initial evaluation in June 2004, Dr. Friedman elicited a history, reviewed available medical records, administered psychological testing, and conducted a mental status examination. [AR 276-294]. Dr. Friedman diagnosed plaintiff with anxiety disorder, not otherwise specified ("NOS"). He explained that plaintiff had developed "a mixed picture of anxiety and depression, best characterized as Anxiety Disorder NOS", as an "emotional response to concerns over the extent and impact of pulmonary problems created by" plaintiff's vocational exposure to Cidex. [AR 277, 290]. Dr. Friedman concluded that plaintiff had been temporarily disabled since March 23, 2004, when she stopped working due to pulmonary problems, and that her temporary total disability would last three to six months, or until her physical condition stabilized. [AR 290-291]. He recommended cognitive behavioral therapy and medication. [AR 291]. Plaintiff was prescribed Prozac and responded "as expected." [AR 275].

Dr. Friedman issued a supplemental report in November 2004 stating that plaintiff remained psychiatrically temporarily totally disabled and "will remain so until [her] physical condition stabilizes."

1 [AR 273]. He added that he "anticipates substantial permanent psychiatric disability." [AR 273]. Dr.
2 Friedman said that anti-anxiety and anti-depressant medication remained indicated, but that plaintiff's
3 "desire to receive such care remains unclear." [AR 273].

4       Dr. Friedman reevaluated plaintiff for her workers' compensation case in June 2005. He elicited an
5 interim history, reviewed available medical records and plaintiff's deposition testimony, administered
6 psychological tests, and conducted a mental status examination. [AR 254-270]. Dr. Friedman remarked
7 that since beginning her initial evaluation, plaintiff had "gone on several out-of-town trips"; she went to
8 Louisiana for a family reunion, to Alabama to spend a weekend with her brother for his birthday, and on
9 a cruise, which she "loved," to Puerto Rico, Aruba, and several other places with her mother. [AR 254-255].
10 Dr. Friedman noted "the continued presence of anxiety and depression due to the limitations and concerns
11 created by her pulmonary disease." [AR 265]. His diagnosis of anxiety disorder NOS was unchanged. He
12 rated her condition "permanent and stationary" beginning on April 7, 2005, "with psychiatric disability in
13 the range of slight to moderate . . . ." [AR 267]. Dr. Friedman opined that plaintiff was "slightly impaired"
14 in the ability to comprehend and follow instructions, perform simple and repetitive tasks, perform complex
15 or varied tasks, relate to others beyond giving and receiving instructions, and make generalizations,
16 evaluations, or decisions without immediate supervision. She was "slightly to moderately impaired" in the
17 ability to maintain work pace appropriate to a given work load, influence people, accept and carry out
18 responsibility for direction, control, and planning. [AR 268]. Progress reports dated from July 14, 2005
19 through November 30, 2005 indicate that plaintiff had benefitted from cognitive behavioral therapy and
20 reported reduced symptomatology. [AR 249-253].

21       At the request of plaintiff's social security disability attorney, Dr. Friedman completed a
22 "Psychiatric/Psychological Impairment Questionnaire" dated May 8, 2006. [AR 549-556]. He listed
23 plaintiff's diagnosis as anxiety disorder NOS. In all 20 work-related functional abilities Dr. Friedman was
24 asked to rate, he rated plaintiff as "markedly limited," which was defined as "effectively precludes the
25 individual from performing the activity in a meaningful manner." [AR 552-554].

26       The vocational expert testified that a hypothetical person of plaintiff's age, education, and work
27 experience with the physical limitations found by the ALJ and the mental functional limitations described
28 by Dr. Friedman in his June 2005 permanent and stationary report could not perform plaintiff's skilled past

relevant work as a medical assistant, but could perform unskilled sedentary or light jobs. The vocational expert further testified that the hypothetical person could perform no work with the limitations spelled out by Dr. Friedman in his May 2006 questionnaire. [AR 65, 70-71, 73].

A treating physician's opinion is not binding on the Commissioner with respect to the existence of an impairment or the ultimate issue of disability. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001). Where, however, a treating physician's medical opinion as to the nature and severity of an individual's impairment is well-supported and not inconsistent with other substantial evidence in the record, that opinion is entitled to controlling weight. Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001); Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); see 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *1-*2. Even when not entitled to controlling weight, "treating source medical opinions are still entitled to deference and must be weighed" in light of (1) the length of the treatment relationship; (2) the frequency of examination; (3) the nature and extent of the treatment relationship; (4) the supportability of the diagnosis; (5) consistency with other evidence in the record; and (6) the area of specialization. Edlund, 253 F.3d at 1157 & n.6 (quoting SSR 96-2p and citing 20 C.F.R. § 404.1527); Holohan, 246 F.3d at 1202.

If a treating source opinion is uncontroverted, the ALJ must provide clear and convincing reasons, supported by substantial evidence in the record, for rejecting an uncontroverted treating source opinion. If contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Tonapetyan, 242 F.3d at 1148-1149; Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995). "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Lester, 81 F.3d at 831.

To support her finding that plaintiff did not have more than mild mental functional limitations that did not restrict her RFC, the ALJ relied primarily on the opinion of Howard M. Greils, M.D., who performed a psychiatric Workers' Compensation Qualified Medical Examination on June 3, 2004. [AR 639-717]. Dr. Greils spent between five and six hours on the evaluation, which entailed obtaining a history, administering psychological tests, and conducting a mental status examination. In a supplemental report dated April 11,

2005, Dr. Greils reviewed and summarized numerous medical records from Dr. Friedman and others, as well as plaintiff's deposition testimony. [AR 639-658]. Dr. Greils opined that plaintiff had no psychiatric impairment. [AR 657]. The ALJ relied on that assessment. She also relied on a detailed critique of Dr. Friedman's June 2004 examination report undertaken by Dr. Greils in his April 2005 supplemental report.

The ALJ noted that Dr. Greils disagreed with Dr. Friedman's findings and conclusions. [AR 24, 654]. Dr. Greils wrote that when he examined plaintiff a week before Dr. Friedman's evaluation, her mental status examination was "completely within normal limits," her mood was euthymic, and signs of depression and anxiety were absent. [AR 24, 654]. Dr. Greils said that his psychological testing did not reflect psychopathology consistent with a psychiatric diagnosis. In addition, plaintiff described no widespread impairments in her ability to function from a psychiatric perspective. She had good rapport with family friends. She reported leading an active social life, including outings to football games, regular church attendance, and all of the usual family functions. Plaintiff was psychiatrically capable of doing household chores, running errands, and caring for her children. [See AR 24, 264]. Dr. Greils noted that plaintiff was "angry and upset about not having been informed regarding the risks of exposure to Cidex," but "anger is not a mental disorder or psychiatric illness." [AR 24, 654]. Plaintiff's reaction never "reached a threshold indicative of any psychiatric diagnosis or mental condition." [AR 25, 654].

The ALJ also summarized what Dr. Greils described as "flaws in [Dr. Friedman's] evaluation procedures and in his reasoning." [AR 654; see AR 24-25]. First, Dr. Greils noted that the validity scores on the Minnesota Multiphasic Personality Inventory 2 ("MMPI-2") test administered by Dr. Friedman "indicated evidence of 'faking bad,'" leading Dr. Greils to conclude that Dr. Friedman's "diagnosis was based on an exaggeration of symptoms."[1] [AR 24, 654]. The only scales that were elevated on the MMPI-2 were "hypochondriasis and hysteria," which "can be interpreted to indicate an overly dramatic presentation of symptoms." [AR 654; see AR 24]. Dr. Friedman said that plaintiff's scores on the hypochondriasis scale

---

[1] In the context of the MMPI test, "faking bad" means "to exaggerate one's symptoms and consequently appear more pathological than is really the case." Bryan v. Singletary, 140 F.3d 1354, 1360 n.11 (11th Cir. 1998)(per curiam). Dr. Friedman stated that plaintiff's "F minus K value (18) might be construed as evidence of 'faking it bad,' given that she has been suffering from as asthmatic condition which has continued to worsen, this might more likely represent a 'cry for help.'" [AR 288].

6

1 were "consistent with a complaining, pessimistic outlook." [AR 24, 654]. Dr. Greils noted that a
2 complaining, pessimistic outlook "does not indicate that there is a mental disorder," but does "point to a
3 situation where an exaggerated or overly dramatic presentation of symptomatology would be present." [AR
4 24-25, 654]. The remaining tests administered by Dr. Friedman were "subjective self-report measures that
5 lack validity checks," and evidence of plaintiff's exaggeration on the MMPI-2 also calls into question the
6 reliability of those subjective measures, which are "transparent to the examinee and easily subject to
7 exaggeration of symptoms." [AR 25, 654]. Dr. Greils concluded that plaintiff's scores on the tests
8 conducted by Dr. Friedman reflect "an exaggerated, overly dramatized report of symptoms and complaints,"
9 not a "cry for help," the interpretation offered by Dr. Friedman. [AR 22-25, 288, 654]. Dr. Greils also
10 pointed out that the sentence completion test showed "themes of frustration and anger," but not "themes of
11 anxiety," and he reiterated that frustration and anger are "reasonable [emotional] responses" to plaintiff's
12 chemical exposure at work, and "are not indicative of a diagnosable mental disorder or psychiatric
13 disability." [AR 655; see AR 25].

14 Second, Dr. Greils said that Dr. Friedman engaged in flawed reasoning with respect to the report of
15 the agreed medical examiner, Dr. Reynolds, who concluded that plaintiff's "pulmonary problems were
16 industrial in causation." [AR 655]. Dr. Friedman wrote that Dr. Reynolds's opinion "clearly supports the
17 contention that [plaintiff] is temporarily totally disabled from a psychiatric standpoint," but Dr. Greils
18 characterized that as an unreasonable reading of Dr. Reynolds's report. [AR 655; see AR 25]. Dr. Greils
19 asserted that the conclusions of an internist regarding causation of an internal medical condition had no
20 bearing on the presence or causation of a psychiatric disability. [AR 25, 655]. Moreover, Dr. Greils noted
21 that plaintiff's asthma appeared to be mild. While he deferred conclusions regarding plaintiff's respiratory
22 condition to appropriate specialists, Dr. Greils pointed out that plaintiff testified that she rarely had asthma
23 attacks and had been found only temporarily partially disabled due to respiratory problems. Thus, the
24 agreed medical examiner's report did not persuasively support Dr. Friedman's opinion regarding the
25 severity of plaintiff's emotional impairment. [AR 25, 657].

26 Third, Dr. Greils took issue with Dr. Friedman's prediction of substantial psychiatric permanent
27 disability. Dr. Greils said that even if plaintiff had a diagnosis of anxiety disorder NOS, a point Dr. Greils
28 did not concede, it "is a relatively mild diagnosis with a good prognosis," and thus was not "predictive of

any permanent psychiatric disability, let alone a 'substantial' one." [AR 655; see AR 25]. See Sample v. Schweiker, 694 F.2d 639, 642-643 (9th Cir. 1982) (noting that the existence of a diagnosed emotional disorder "is not per se disabling," and that "there must be proof of the impairment's disabling severity"). That observation is consistent with Dr. Friedman's initial evaluation report, wherein he "anticipate[d] that the instant temporary disability will last 3-6 months or until the physical condition stabilizes." [AR 291]. Dr. Greils emphasized that his evaluation of plaintiff led him to conclude that she had *no* psychiatric diagnosis or disability. [AR 655].

Fourth, Dr. Greils pointed to testimony from plaintiff's deposition in her workers' compensation case that contradicted plaintiff's allegations of disability and supported his opinion that plaintiff did not have any diagnosable psychiatric disorder. [AR 25, 647-653, 655]. Specifically, Dr. Greils noted that:

(i)  plaintiff testified that she could return to work at the family practice clinic, but not to her former position at the sigmoid clinic, because the family practice clinic would not require her to work with the chemical that caused her respiratory injury [AR 25, 649, 655];

(ii)  plaintiff testified that she could not got back to working around that chemical, Cidex, but she could do the rest of her usual job duties and still be effective as a medical assistant [AR 25, 652, 656];

(iii)  asked to define depression, plaintiff said it means feeling "just low, just sad, just down," feelings that Dr. Greils characterized as "within the normal spectrum of emotions" rather than as indicative of a psychiatric disorder [AR 25, 651, 656];

(iv)  plaintiff said that the only activities she can no longer participate in are those, such as bike-riding, that require physical exertion and may cause shortness of breath [AR 25, 651, 656];

(v)  plaintiff did not identify any activities precluded by mood or anxiety symptoms [AR 25, 651, 656];

(vi)  plaintiff testified that she was enrolled at community college, where she was taking a math class towards her R. N. degree, and that she went to school two to three times a week for two to three hours [AR 25, 648-649, 656]; and

(vii)  plaintiff testified that she did all of the care taking of her children [AR 25, 650, 656].

Dr. Greils observed that the criteria in the DSM-IV for a psychiatric disorder require that there be "significant impairment in social or occupational functioning," and that "there is nothing in [plaintiff's] testimony that indicates that she has psychiatric or psychological symptoms of the level of severity that

impair either social or occupational functioning." [AR 656].

Fifth, Dr. Greils cited plaintiff's deposition testimony undermining the credibility of her statement to him that she was "experiencing panic attacks whenever I enter a medical office." [AR 656]. For example, she testified that after her alleged initial panic attack, she had not had another that was "severe like that" and said "I didn't actually go into an attack," and she exhibited no signs of panic or anxiety when visiting his office in a medical building [AR 650, 657].

Sixth, in response to plaintiff's testimony that a physician had diagnosed her with "Post Traumatic Stress Syndrome," Dr. Greils commented that while he had not been provided with those records for review, plaintiff did not even come close to meeting "the extensive and stringent DSM-IV criteria for this severe disorder." [AR 25, 657].

The ALJ articulated additional valid reasons for rejecting Dr. Friedman's assessments. She noted that she was not bound by Dr. Friedman's workers' compensation disability opinion, and that his workers' compensation disability rating is not equivalent to the RFC used for social security disability purposes. While the ALJ cannot disregard a physician's opinion merely because it is rendered in a workers' compensation case, the ALJ was correct that a permanent and stationary workers' compensation disability rating does not necessarily mean that the individual is disabled for social security disability purposes. That is borne out by the vocational expert's testimony that plaintiff would have no problem performing unskilled work with the limitations described by Dr. Friedman in his June 2005 workers' compensation permanent and stationary report.[2]

The ALJ also questioned whether Dr. Friedman assessed plaintiff's RFC with sufficient specificity, but even if Dr. Friedman did so, the ALJ pointed to other weaknesses in Dr. Friedman's assessments. She noted that Dr. Friedman relied heavily on subjective complaints and subjective assessment measures, the credibility of which were undermined by discrepancies and inconsistent statements in the record. For example, plaintiff asserted that she had disabling anxiety about leaving the house or entering medical office buildings and other places where she might be exposed to fumes, gases, and other emissions that could

---

[2] Dr. Friedman's May 2006 report, which portrayed plaintiff as more severely impaired than his earlier assessments, was not prepared for use in plaintiff's workers' compensation case, but rather at the request of plaintiff's social security disability attorney. [See AR 549-556].

aggravate her respiratory problems. Nonetheless, plaintiff reported that she frequently attended doctors' appointments, she flew on airplanes and traveled on a cruise ship without incident, she engaged in a variety of normal daily activities, including caring for her children, performing household chores, shopping, and family outings, and she was able to attend college classes two or three times a week during her alleged period of disability.[3] [See AR 16, 23, 28-29, 31, 255-257, 260]. The ALJ also cited the unexplained inconsistency that existed between plaintiff's near-normal mental status examination and Dr. Friedman's assertion that she was significantly impaired or disabled by anxiety. [AR 28]. In addition, the ALJ permissibly declined to give weight to Dr. Friedman's May 2006 questionnaire, which was prepared solely for the purpose of obtaining social security benefits and reflected much more severe symptoms than his workers' compensation reports, without any contemporaneous clinical evidence or findings supporting a material deterioration in plaintiff's mental functioning.[4] [AR 29, 549-556].

The ALJ's reasons for rejecting Dr. Friedman's opinions in favor of the conflicting opinion of Dr. Greils were specific, legitimate, and based on substantial evidence in the record. See Batson, 359 F.3d at 1195 (stating that an ALJ need not accept a doctor's opinion that is "unsupported by the record as a whole" or "by objective medical findings," and holding that the ALJ did not err in giving minimal evidentiary weight to two treating physicians' opinions that were contradicted by a consultative examiner's opinion); Morgan, 169 F.3d at 602-603 (stating that internal inconsistencies can constitute relevant evidence to support rejection of a treating physician's opinion, and that a disability opinion "'premised to a large extent upon the claimant's own accounts of his symptoms and limitations' may be disregarded where those complaints have been 'properly discounted'")(quoting Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989); cf. Matthews v. Shalala, 10 F.3d 678, 680-681 (9th Cir. 1993) (concluding that the ALJ properly rejected

---

[3] Plaintiff does not challenge the ALJ's adverse credibility finding.

[4] Even if the ALJ erred in rejecting Dr. Friedman's June 2005 workers' compensation permanent and stationary report, the vocational expert testified that the hypothetical person described by the ALJ with the mental limitations described in that report could perform unskilled light or sedentary jobs. Based on that testimony and the grids, the ALJ made an alternative finding at step five that plaintiff could perform other sedentary or light unskilled work. Therefore, the ALJ committed reversible error only if she improperly rejected Dr. Friedman's May 2006 assessment, which would preclude performance of plaintiff's past relevant work and alternative work.

the claimant's subjective complaints based, in part, on the claimant's ability to attend school three days a week and to perform housecleaning, light gardening, and shopping). Dr. Greils's opinion, which was based on independent clinical findings, including a mental status examination and psychological testing, constituted substantial evidence supporting the ALJ's finding that plaintiff did not have a severe mental impairment.   **Dr. Brawer and Dr. Zodkevitch**

The ALJ did not err in evaluating the opinions of Stephen I. Brawer, Ph.D. and Rod Zodkevitch, M.D. As examining physicians, their opinions were not entitled to greater weight than that of Dr. Greils.

Dr. Brawer, the Commissioner's consultative examining psychologist, examined plaintiff in March 2006. He obtained a history, conducted a mental status examination, and administered several psychological tests. [AR 25-26, 369-375]. Unlike Dr. Greils, he did not review any records. [AR 370]. Dr. Brawer described plaintiff as a sub-optimal historian. Based on her clinical presentation and test results, Dr. Brawer's impression was (1) anxiety disorders, with indications of phobia and panic attacks, related to anxiety over exposure to toxic chemicals, and (2) depressive disorder, secondary to general medical condition. [AR 374]. Dr. Brawer concluded that plaintiff could perform simple, repetitive tasks and some detailed, varied, or complex tasks. Her ability to sustain attention and concentration for extended periods of time "may be mildly diminished, due to emotional factors." [AR 374]. During testing, plaintiff exhibited adequate to mildly diminished attention, concentration, persistence, and pace in completing tasks. Dr. Brawer opined that plaintiff may have a mild impairment in managing customary work stresses and persisting for a regular work day. She could follow a routine and organize herself for basic tasks. "However, given her anxiety, dysphoria and physical complaints, [plaintiff] may experience difficulty sustaining the necessary stamina for full-time employment in the competitive work force. The appropriate medical specialist should evaluate the effects of any physical limitations upon work functioning." [AR 374]. Plaintiff appeared capable of working independently, sustaining cooperative relationships with coworkers and supervisors, relating in an appropriate manner with authority figures, and managing her own funds. [AR 374].

Even though he diagnosed plaintiff with anxiety and depression, Dr. Brawer still concluded that plaintiff had, at most, mildly diminished mental functioning. [AR 374]. He suggested that she "*may* experience difficulty*" having the stamina for a full-time job due to a combination of mental and physical

limitations, but he deferred a conclusion about her physical limitations to the appropriate specialist. [AR 374 (italics added)]. The ALJ permissibly discounted the subjective symptoms that plaintiff related to Dr. Brawer in light of the record as a whole. [See AR 30 (noting that the record did not corroborate the subjective limitations that plaintiff reported to Dr. Brawer)]. Therefore, the ALJ did not err in evaluating Dr. Brawer's opinion.

In October 2007, plaintiff was referred to Dr. Zodkevitch for an examination by her social security disability attorney. [AR 50, 522-539]. Dr. Zodkevitch elicited a history, conducted a mental status examination, reviewed medical records, and administered one test, the Beck Depression Inventory. His diagnosis was major depressive disorder, severe, without psychotic features; panic disorder with agoraphobia; and psychological factors affecting medical condition. [AR 529]. He concluded that plaintiff was totally disabled from a psychiatric standpoint, unable to perform basic work duties, unable to concentrate, unable to relate to people, and unable to carry on a personal relationship with others. [AR 529-530]. On a checklist, he rated her as moderately limited ("significantly affects but does not preclude the individual's ability to perform the activity") or markedly limited ("effectively precludes the individual from performing the activity in a meaningful manner") in 16 out of 20 work-related functional abilities, including the ability to remember and carry out one- or two-step instructions and the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance. [AR 534-537].

The ALJ permissibly rejected Dr. Zodkevitch's examining source opinion as inconsistent with the record as a whole, including Dr. Greils's conflicting examining source opinion, and because Dr. Zodkevitch gave too much weight to plaintiff's properly discounted subjective symptoms and limitations. See Brawner v. Sec'y of Health & Human Services, 839 F.2d 432, 433-434 (9th Cir. 1988) (per curiam) (stating that medical conclusions are entitled to less weight to the extent that they rely on the claimant's properly discounted subjective history).

**Conclusion**

For the reasons stated above, the Commissioner's decision is supported by substantial evidence and reflects application of the proper legal standards. Accordingly, defendant's decision is **affirmed.**

**IT IS SO ORDERED.**

March 19, 2010

_____
ANDREW J. WISTRICH
United States Magistrate Judge